Toomey, J.
INTRODUCTION
The plaintiffs, James and Irene McCarthy, brought a complaint against defendants Framingham Cooperative Bank (“the bank”) and Edward Mahan, alleging that the defendants acted improperly when the plaintiffs bought a partially constructed house from the bank. The matter is before the court on the bank’s motion for summaryjudgment and the plaintiffs’ cross motion for partial summary judgment. For reasons stated, the bank’s motion is granted in part and denied in part, and the plaintiffs motion is denied.
BACKGROUND
The bank had entered a thirteen-month financing agreement with Timothy Marks; the agreement obligated Marks to construct a house at 17 Presidential Drive in Southborough, Massachusetts. During the term of the agreement, members of the bank’s Security Committee approved various disbursements on the loan after visiting the site to confirm that the work for which each disbursement was requested had been completed. Marks was unable to comply with the original schedule, and, as a consequence, the loan was extended for an additional 13 months. The bank also permitted smaller releases of money at intermediate milestones in the construction to accommodate Marks’ need for funding.
*662 Prior to the completion of the house, the bank foreclosed and, pursuant to its own bid at a foreclosure auction, became the owner of the property. On July 31, 1989, the plaintiffs followed a sealed bid procedure, chosen by the bank, and offered to purchase the property from the bank. Prior to submitting their bid, the plaintiffs had never been inside the house, and had never examined plans for the house nor requested an opportunity so to examine.
On August 1, 1989, the plaintiffs met with the president of the bank to sign an offer to purchase. The bank’s attorney prepared a draft Purchase and Sale Agreement which contained the following clause:
The BUYER acknowledges that the BUYER has not been influenced to enter into this transaction nor has he relied upon any warranties or representations not set forth or incorporated in this agreement or previously made in writing, except for the following additional warranties and representations, if any, made by either the SELLER [sic]: None ... It is specifically understood that the Seller is selling premises in its present uncompleted state in an “as is” condition and make [sic] no warranties whatsoever as to the condition of the premises. The Buyer hereby acknowledges that Buyer is completely satisfied as to the present condition of the premises and agrees to purchase the premises “as is” and further acknowledges that it is the Buyers responsibility to obtain all necessary permits and authority to complete the buildings located on the premises and acquire an occupancy permit for the premises.
The McCarthys requested several changes in the Purchase and Sale Agreement. With respect to the above quoted clause, they asked that the bank delete the word “None” and add, “SELLER’S agent represented that SELLER bought mortgage back at $400,000; and there are no liens or encumbrances.” They also requested that the sentence, “Property subject to ‘as is’ building inspection” be added to the end of the clause. The bank did not agree to the proposed changes, and the plaintiffs, without further objections, signed the Purchase and Sale Agreement as presented.
Prior to closing on the property, the McCarthys met with Marks, the original owner and builder. Following the meeting, Marks sent Mrs. McCarthy a hostile, rambling, handwritten letter which stated in part:
I worked twenty months in that home for free! I left $100,000.00 of my money there while listening to conceited buyers and lazy subcontractors complain. You now have the gall to ask me to give you a warranty on the work that was done before the Bank took the house away from me via foreclosure.[3] The only way I could warrant that work would be if I made a profit. Ask the Goddamn bank to give you a warranty. Your self-centered know-it-all nature will cause you to pay $200,000 to get that house finished by men who will overcharge you because of your arrogant attitude in order to coexist with your Bullshit and you will have to do a lot of the planning and telephoning yourself. They’ll “yes’ you to death to take your deposit money and tell you afterwards that the Bldg, inspector wouldn’t approve what you wanted.
After purchasing the property, the McCarthys retained a second builder, Michael J. Connolly, to complete the house. He estimated the work would cost $200,000 to $250,000. At his suggestion, the McCarthys requested the house plans from the bank. The plans supplied by the bank did not match the architecture of the house.
The McCarthys eventually paid Connolly an amount far in excess of the original estimate. The cost overrun was caused in part by defects created by the original builder, including defective structural beams, electrical wires not capped off, a deck with no foundation, defective plumbing, and improper grading.[4] Had the McCarthys known of the various defects and been aware of the financial and personality conflicts with the first builder, they would not have purchased the property.
On August 21, 1990, the McCarthys sent a demand letter, pursuant to G.L.c. 93A, to the bank, asserting that the bank, through its inspectors, knew or should have known of the defects in the property. The bank’s counsel responded, in a letter dated September 25, 1990, denying that the bank had inspectors in its employ who were aware of any hidden defects and asserting that the “as is” clause of the Purchase and Sale Agreement immunized the bank from liability. The McCarthys then brought the instant complaint against the bank, alleging misrepresentation, breach of contract, breach of duty, breach of implied warranty, infliction of emotional distress, and breach of G.L.c. 93A. The case is now before the court on the parties’ cross-motions for summary judgment.
DISCUSSION
Summary judgment shall be granted where there are no genuine issue as to any material fact and where the moving party is entitled to judgment as a matter of law. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassessov. Commissioner of Correction, 390 Mass. 419, 422 (1983); CommunityNat’lBankv. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue “and [further] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404Mass. 14, 16-17 (1989). Where both parties have moved for summary judgment and “in essence there is no real dispute as to the salient facts or if only a question of law is involved,” summary judgment shall be granted to the party entitled to judgment as a matter of law. Cassesso, supra Summary judgment is appropriate upon a number of the counts at bar.
Count I: Fraud
In Count I of their complaint, the plaintiffs allege that the bank made false, fraudulent, and willful misrepresentations of fact, upon which the plaintiffs *663 relied, and that plaintiffs were thereby damaged. They allege that the bank knew of, but did not disclose, defects in the original construction, problems between the builder and his subcontractors, another foreclosure in the neighborhood, details of the financial arrangement between the bank and the builder, serious disputes between the bank and the builder, and the fact that the attorney representing the plaintiffs in connection with the Purchase and Sale Agreement worked for a law firm representing the bank. The plaintiffs also claim that the bank falsely suggested to them that, because of competition for the house, they would need to submit a bid of at least $400,000 in order to prevail. The bank disputes that it knew of construction defects or that it lied to the plaintiffs when it told them other people were interested in buying the house.
Fraud may be found where a party gains or attempts to gain some undue advantage by means of a representation the party knows to be false. Commonwealth v. O’Brien, 305 Mass. 393, 398 (1940). Sellers of real estate, however, are not liable in fraud for failing to disclose each and every latent defect known to them which reduces materially the value of the property. Nei v. Burley, 388 Mass. 307, 310 (1983) (no liability for failure to reveal that percolation on land made real estate unsuitable for building house).
The bulk of plaintiffs’ fraud claims rest upon allegations of nondisclosure with respect to construction defects. The bank is not, in the circumstances at bar, liable for simple nondisclosure. Id; Swinton v. Whttinsville Savings Bank, 311 Mass. 677 (1942) (no liability for failure to reveal presence of termites). See also, Bishop, PrimaFacieCase, 17AMass. Prac. §§962,963.
Additionally, the plaintiffs have not presented any facts refuting evidence by the bank to the effect that other parties were indeed interested in purchasing the house. Plaintiffs have, therefore, not met their burden of producing evidence that bank employees gave them false information about competing interest in the house. See Pederson v. Time, Inc., 404 Mass. 14, 17 (1989).
Because plaintiffs will likely be unable to produce, at trial, evidence upon essential elements of their fraud claim, summary judgment for the bank will issue on Count I of the complaint. Flesner v. Technical Communication Corp., 410 Mass. 805, 809 (1991).
Count II: Breach of Contract
In Count II, the plaintiffs allege that the bank breached its contract. However, the plaintiffs have not identified any contract provision breached by the bank. Therefore, summary judgment is granted for the bank on Count II.
Count III: Breach of Duty
In Count III of their complaint, the plaintiffs allege that the bank “breached duties it owed to the Plaintiffs.” However, they do not identify any duties owed by the bank to the plaintiff not otherwise referenced in other counts of the complaint. Therefore, summary judgment is granted for the bank on Count III.
Count IV: Breach of Implied Warranty
In Count IV, the plaintiffs allege that the bank breached an implied warranty to the plaintiffs. However, the plaintiffs have not identified any implied warranty breached by the bank. Therefore, summary judgment is granted for the bank on Count IV.
Count V: Intentional Infliction of Emotional Distress
In Count V, the plaintiffs allege that the bank intentionally inflicted emotional distress on the plaintiffs. To overcome a motion for summary judgment on this count, the plaintiffs must produce evidence showing that the bank, without privilege to do so and by means of extreme and outrageous conduct, intentionally caused severe emotional distress. Agis v. Howard Johnson Co., 371 Mass. 140,142 (1976). The plaintiffs must demonstrate, seriatim, that the bank, through its employees, intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of the conduct; that the conduct was extreme, outrageous, beyond all possible bounds of decency, and was utterly intolerable in a civilized community; that the actions of the bank employees were the cause of the plaintiffs’ distress; and that the emotional distress sustained by the plaintiffs was severe and of a nature that no reasonable person could be expected to endure it. Id. at 144-45.
The totality of plaintiffs’ evidence of emotional distress is their affidavit testimony asserting only that they suffered “physical and emotional distress.” They have submitted no evidence that their distress was severe and of a nature that no reasonable person could be expected to endure it. Further, it is not possible to infer from any of the evidence submitted that the bank’s actions toward the plaintiffs constituted conduct wholly incongruous with the bounds of decency and utterly intolerable in a civilized society. Therefore, summary judgment is granted for the defendants on Count V.
Count VI: Breach of G.L.c. 93A
Finally, both the plaintiffs and the bank have moved for summary judgment on Count VI, the claim of breach of G.L.c. 93A. The relevant facts are the same as compelled judgment in favor of defendant upon Count I. Supra. The Count VI burden on plaintiffs, however, is less demanding. Under G.L.c. 93A, a seller of real estate may be liable if the seller knew of a defect in the property, the defect is a material circumstance which would have led the buyer not to purchase the property, and the seller failed to disclose the problem. 940 Code Mass.Regs. 3.16(2); see also, Sheehy v. Lipton Industries, Inc., 24 Mass.App.Ct. 188, 195 (1987). Thus, G.L.c. 93A liability may lie even where fraud liability is not established.
The parties dispute whether the bank knew of defects in the property. While the plaintiffs have been *664 unable to submit direct evidence demonstrating that bank employees were aware of defects, plaintiffs have offered circumstantial evidence thereof by means of proof that members of the bank’s Security Committee made numerous site visits to check on the progress of the construction. Plaintiff have also presented evidence that the bank was aware of difficulties experienced by the builder in completing the project. A jury might reasonably infer from such evidence that bank personnel knew of defects in the house. Thus, notwithstanding the inadequacy, in the fraud context, of such a showing, the evidence might be sufficient for G.L.c. 93A liability if the facts required therefor are found by the jury. There is, accordingly, no occasion on this record for the granting of summary judgment for either party on the G.L.c. 93A claim for Count VI.
ORDER
For the foregoing reasons, it is hereby ORDERED that Defendant Framingham Cooperative Bank’s motion for summary judgment be ALLOWED as to Counts I, II, III, IV, and V of the complaint, and DENIED as to Count VI. It is further ORDERED that the Plaintiff McCarthy’s motion for partial summary judgment be DENIED.

The plaintiffs deny that they ever requested that Marks supply a warranty.

For the purposes of its own motion for summary judgment, the bank does not dispute that these defects existed. As the bank did not bring to the court’s attention any evidence showing that the defects did not exist, I treat the defects as undisputed for purposes of the plaintiffs’ motion as well.